JESSICA A. BETLEY
TARA J. ELLIOTT
Assistant U.S. Attorneys
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT 59403
119 First Ave. North, # 300
Phone:     (406) 761-7715
FAX:       (406) 453-9973
Email:     Jessica.Betley@usdoj.gov
           Tara.Elliott@usdoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA ALBERTO RODRIGUEZ,<br><br>Defendant. | CR 14-96-GF-BMM<br><br><br><br>SENTENCING<br>MEMORANDUM |

The United States of America, by and through Jessica A. Betley, Assistant U.S. Attorney for the District of Montana, provides the Court with a memorandum in aid of sentencing of the defendant.

1

## INTRODUCTION

The defendant pleaded guilty to the crimes of conspiracy to possess with intent to distribute and to distribute methamphetamine; conspiracy involving a firearm and a drug trafficking crime; and conspiracy to commit money laundering. PSR ¶ 8.  The defendant also pleaded true to the first, second, and third forfeiture allegations contained in the Indictment.  *Id.*

The Presentence Investigation Report (PSR) has calculated the defendant's total offense level as 41 and his criminal history category as II, which results in an advisory guideline range of 360 months to a life-term of imprisonment.  PSR ¶ 106.  The defendant's total offense level, however, includes a two-level enhancement for acts of money laundering pursuant to USSG § 2S1.1(b)(2)(B). PSR ¶ 68.  By the terms of the plea agreement between the parties, the government previously agreed to move to vary downward two levels if the defendant's total offense level included an enhancement for acts of money laundering.  Therefore, the government moves the Court to vary downward from a total offense level of 41 to a total offense level of 39.  This results in an advisory guideline range of 292 to 365 months imprisonment.

The government has no objections to the PSR and this final calculation, and recommends that the Court sentence the defendant to a term of 320 months imprisonment to be followed by at least five years of supervised release.  The

defendant has one objection that the government will address below. Lastly, at the time of sentencing, the government will move to dismiss Counts 5 and 20, as well as the second forfeiture allegation contained in the Indictment.

## OBJECTIONS

The defendant objects to a four-level enhancement under USSG § 3B1.1(a) for being classified as a "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). He specifically states, "[h]e did not direct numerous individuals in the illegal purchase, sale, transport, and storage of controlled substances." (Addendum to PSR). The defendant is wrong. On the contrary, he exercised complete control over an extensive methamphetamine distribution enterprise that operated throughout Montana, and the four-level enhancement is warranted.

Under USSG § 3B1.1(a), "[f]or a four-point upward adjustment to be appropriate, a preponderance of the evidence must support a finding that the defendant was an organizer or leader, 'not merely that the defendant was more culpable than others who participated in the crime.'" *United States v. Avila*, 95 F.3d 887, 889 (9th Cir. 1996) (citing *United States v. Harper*, 33 F.3d 1143, 1150 (9th Cir. 1994), *cert. denied*, 513 U.S. 1118, 115 S.Ct. 917, 130 L.ED.2d 798 (1995)).

Specifically, "to sustain a finding that a defendant was an organizer or a leader [under § 3B1.1(a)], there must be evidence that the defendant exercised some control over others involved in the commission of the offense *or* was responsible for organizing others for the purpose of carrying out the crime." *United States v. Ingham*, 486 F.3d 1068, 1074 (9th Cir. 2007) (citing *U.S. v. Avila*, 95 F.3d at 889). Significantly, "[a]n enhancement under §§ 3B1.1(a) or (B) does not require control over all of the five or more participants." *United States v. Garcia*, 497 F.3d 964, 970 (9th Cir. 2007). The four-level enhancement may even be justified simply by showing the defendant '"…coordinated or oversaw the procurement or distribution of drugs' or 'exercised any control or organizational authority over others.'" *United States v. Garcia*, 497 F.3d 964, 970 (9th Cir. 2007); citing *United States v. Avila*, 95 F.3d 887, 890-91 (9th Cir. 1996). "Fronting" drugs may also be indicative of a managerial role. *Garcia*, 497 F.3d at 970; *See United States v. Alred*, 144 F.3d 1405, 1422 & n. 18 (11th Cir. 1998).

Furthermore, commentary to USSG § 3B1.1 provides the following factors a court should consider in distinguishing a leadership and organizational role:

(1) the exercise of decision making authority;

(2) the nature of participation in the commission of the offense;

(3) the recruitment of accomplices;

(4) the claimed right to a larger share of the fruits of the crime;

4

(5) the degree of participation in planning and organizing the offense;

(6) the nature and scope of the illegal activity; and

(7) the degree of control and authority exercised over others.

USSG § 3B1.1, comment. (n.4).

Here, the defendant undoubtedly exercised control over numerous participants in this drug and firearms conspiracy *and* was responsible for organizing others to carry out these crimes. *U.S. v. Ingham*, 486 F.3d at 1074. Beginning in the spring of 2014, the defendant was the highest authority figure over his co-defendants in Montana. He regularly traveled from California to Montana with pounds of methamphetamine each trip, all of which was destined for redistribution by his co-defendants.

The defendant exercised complete authority over co-defendants Martin Leland and Lawrence Griner, both of whom by all accounts, abided by all of the defendant's directives. It should be noted that while the defendant spoke to very few co-defendants directly besides Leland and Griner, this does not deter from the leadership role of the defendant. Rather it shows how much control and authority the defendant exercised as the "boss," and the power the other co-defendants saw in the defendant. The defendant typically "fronted" methamphetamine to Leland, and then frequently contacted Leland to inquire into whether Leland had collected the money owed for the fronted methamphetamine. In fact, the majority of the

conversations between the defendant and Leland involved the distribution of methamphetamine and the financial debt that was then owed to the defendant. PSR ¶ 42.

Considerably, besides fronting methamphetamine, the defendant directed co-defendants in the acquisition of firearms in furtherance of numerous crimes. He consistently provided money to Leland to purchase firearms in Great Falls, all of which were destined for the defendant. The defendant also communicated to Leland that Griner was selling the defendant an AK47. PSR ¶ 35.

The defendant also provided his bank account number to Leland, in order that Leland could collect the drug proceeds from other co-defendants, and deposit those proceeds into the defendant's account. Co-defendants from Montana eventually deposited over $30,000 into the defendant's bank account, and over $10,000 into his Greed Dot account. The defendant clearly exercised the ultimate decision making authority and control over others in this conspiracy, as well as he claimed the largest share of the illegal proceeds, including monetary benefit and firearms acquisitions.

The defendant unmistakably dictated and organized the actions and control over other participants in this conspiracy, as well as organized these participants to carry out numerous drug and firearms crimes. Each factor found in USSG

§ 3B1.1, comment. (n.4) supports the imposition of the four-level enhancement for the defendant's leadership role.

## ARGUMENT

**Sentencing Analysis:**

Section 3553(a) of Title 18 of the United States Code contains prefatory language—"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;
- promote respect for the law;
- provide just punishment for the offense;
- afford adequate deterrence to criminal conduct;
- protect the public from further crimes of the defendant; and,
- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, subsection (1) of § 3553(a) requires the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; subsection (3) requires the court to consider the kinds of sentences available; subsections (4), (5), and (6) require the Court to consider the sentencing

guidelines and policy statements, and to avoid unwarranted sentencing disparity; and subsection (7) requires the Court to provide restitution to victims.

### A.     18 U.S.C. § 3553(a)(1) -  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

In determining a particular sentence to impose, this Court shall consider the nature and circumstances of the specific offense, and the history and characteristics of the defendant.  18 U.S.C. § 3553(a)(1).  Here, the defendant facilitated a large-scale methamphetamine conspiracy that was responsible for distributing tens of pounds of methamphetamine throughout Montana.  From just April 24, 2014, through the defendant's arrest on September 26, 2014, agents tracked the defendant make 13 separate trips from Los Angeles, California, to Great Falls, Montana, in order to distribute methamphetamine.

Based on financial transactions and recovered methamphetamine, it is likely that the defendant conservatively brought at least two pounds of methamphetamine on each trip.  Once in Montana, the defendant broke down this methamphetamine into smaller portions for his main distributors.  These distributors then broke down the methamphetamine even further for resale, which created an extremely detrimental impact on many Montana communities, but rendered a substantial profit for the defendant.

During this time, the defendant also recruited others to purchase firearms for him with the intended purpose to take these firearms back to California.  When law

8

enforcement ultimately executed a search warrant on the defendant's home in Los Angeles after his arrest in Montana, they found ten firearms, including numerous pistols, a shotgun, and a semi-automatic rifle, along with hundreds of rounds of ammunition. Two of the recovered firearms had been purchased by Leland in Great Falls. PSR ¶ 34.

This conspiracy ultimately culminated in the defendant's final trip to Montana on September 25 and 26, 2014, when he brought approximately nine pounds of absolutely pure methamphetamine on the journey. In just one seizure, agents confiscated 2213 grams of methamphetamine from the defendant's Great Falls hotel room. This methamphetamine had a purity of 100 percent, and notably, the defendant's fingerprints were also found on the packaging. In a search later that evening on the defendant's Los Angeles home, agents recovered approximately an additional 100 grams of methamphetamine, heroin, drug ledgers, firearms, hundreds of rounds of ammunition, and additional drug paraphernalia. A sentence of 320 months will adequately account for the nature and circumstances of this offense, as well as the defendant's history and characteristics, which includes a prior conviction for the sale of heroin. PSR ¶ 79.

**B.     18 U.S.C. § 3553(a)(2)(A) – The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense.**

Respect for the law is critical to the success of the criminal justice system. This respect is established by ensuring that the sentence reflects the seriousness of the offense, which in turn should provide just punishment for all interests involved. Here, the defendant orchestrated a significant criminal enterprise that was responsible for trafficking methamphetamine and firearms. He coordinated an extremely serious and dangerous organization that was ultimately responsible for bringing tens of pounds of pure methamphetamine into Montana communities. Equally as frightening is the amount of firearms traded and exchanged by the defendant and his co-defendants during this time period.

A term of 320 months imprisonment is entirely appropriate here after considering the extraordinary amount of methamphetamine and firearms involved in this conspiracy, as well as the extreme danger created by the defendant's facilitation of these offenses. A sentence of 320 months also appropriately reflects the seriousness of this offense, promotes respect for the law, and provides just punishment for the offense.

**C.    18 U.S.C. § 3553(a)(2)(B) and (C) – The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of the Defendant.**

A sentence of 320 months imprisonment will also deter the defendant from future criminal conduct. The defendant has a history of trafficking illegal narcotics, and only an extremely significant period of imprisonment is likely to deter him from engaging in criminal conduct in the future. Likewise, a sentence of 320 months will also protect the public from any further crimes of the defendant.

**Sentencing Recommendation:**

The United States respectfully recommends a sentence of 320 months imprisonment with at least five years of supervised release to follow.

DATED this 17th day of May, 2015.

MICHAEL W. COTTER
United States Attorney


/s/  Jessica A. Betley
JESSICA A. BETLEY
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to D. Mont. L.R. 7.1(d)(2) and CR 47.2, the body of the attached memorandum is proportionately spaced, has a typeface of 14 points or more, and the body contains 2,044 words, excluding the caption and certificate of compliance.

>MICHAEL W. COTTER
>United States Attorney
>
>
>/s/  Jessica A. Betley
>JESSICA A. BETLEY
>Assistant U.S. Attorney